## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| IN RE | BK. NO. 17-03727-5-SWH |
| **MELVIN TROY PUTMAN AND STEPHANIE PUTMAN, *FDBA* ALMAN GIFTS LLC,** | CHAPTER 7 |
| DEBTORS. | |

## <u>MOTION FOR RELIEF FROM STAY</u>

Bank of America, N.A., its assignees and/or successors in interest ("Movant" herein) alleges as follows:

1.      That on or about July 28, 2017, the above named Debtors filed their Chapter 7 Petition in Bankruptcy with this Court.

2.      Movant is the current payee of promissory note dated June 6, 2008 in the principal amount of $116,176.00 ("Note" herein) secured by a senior deed of trust of same date ("Trust Deed" herein) upon property generally described as **134 Deepwoods Rdg., Rocky Point, North Carolina 28457** ("Property" herein) and legally described as set forth in the Trust Deed. Copies of the Note and Trust Deed are attached hereto as **Exhibit "A"** and made a part hereof. Movant was assigned the beneficial interest in said Trust Deed by an Assignment of Deed of Trust dated April 19, 2016.

3.      Bank of America, N.A. services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case is dismissed, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the promissory note. Movant will enforce the promissory note as transferee in possession. Movant is the original mortgagee or beneficiary or the assignee of the Trust Deed.

1

4.     Movant is informed and believes, and, based upon such information and belief, alleges that title to the subject Property is currently vested in the name of Debtors.

5.     Movant will seek leave of Court to specify any further encumbrances against the subject Property at the time of trial/hearing.

6.     As of August 1, 2017, the outstanding Obligations are:

| | |
|---|---|
| Unpaid Principal Balance | $99,146.62 |
| Unpaid, Accrued Interest | $7,157.22 |
| Escrow Advances | $2,788.80 |
| Corporate Advances | $5,295.09 |
| FHA Premium Due HUD | $80.66 |
| Late Charges Due | $93.96 |
| Less:  Partial Payments | ($0.00) |
| Minimum Outstanding Obligations | $114,562.35 |

7.     In addition to the other amounts due to Movant reflected herein, as of the date hereof, in connection with seeking the relief requested in the Motion, Movant has also incurred $681.00 in legal fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and costs in accordance with applicable loan documents and related agreements, the Bankruptcy Code, and otherwise applicable law.

8.     The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtors:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 20 | 01/01/2016 | 08/01/2017 | $783.07 | $15,661.40 |
| Corporate Advance | | | | $1,226.50 |
| Expense Advance | | | | $4,068.59 |
| Late Charge | | | | $93.96 |
| Less partial payments: | | | ($0.00) | |
| | | | Total:  $21,050.45 | |

2

9.      Based upon the foregoing, Movant alleges that it is not adequately protected, that the subject Property is not necessary to effectuate Debtors' rehabilitation, and that it would be unfair and inequitable to delay this Movant in the foreclosure of Movant's interest.  Movant urges that this Court issue an Order herein permitting this Movant to proceed to a Foreclosure Sale of the Property, including necessary action to obtain possession of the Property.

10.      The commercially reasonable value of the Property is approximately $64,152.00, as evidenced by the Debtors' Schedules A/B & D, attached hereto as **Exhibit "B"** and made a part hereof.

11.      Debtors have elected to surrender the subject Property, as evidenced by the Statement of Intention, attached hereto as **Exhibit "C"** and made a part hereof.

12.      Algernon L. Butler, III has been appointed by this Court as the Chapter 7 Trustee in this instant Bankruptcy proceeding.  By virtue of his position as Trustee of the estate of Debtor herein, he holds title to the subject Property in that capacity.  To the extent the relief sought herein is granted, Algernon L. Butler, III, Trustee, is bound by any such judgment.

13.      This Court has jurisdiction of this action pursuant to the provisions of Title 28 U.S.C. Sections 1334 and 157 and 11 U.S.C. Section 362(d).

WHEREFORE, Movant prays judgment as follows:

1)      For an Order granting relief from the Automatic Stay, permitting this Movant to move ahead with foreclosure proceedings under Movant's Trust Deed and to sell the subject Property under the terms of said Trust Deed, including necessary action to obtain possession of the Property.

2)      For an Order annulling the Automatic Stay effective the date of the filing of this Bankruptcy and allowing Movant to proceed with any necessary action to obtain possession of the subject Property.

3)      For an Order binding Debtors in any conversion of the above-referenced Bankruptcy proceeding and in any subsequently filed bankruptcy proceeding of any nature

whatsoever, relative to this Movant's interest in the subject Property, and prohibiting the effect of any further Automatic Stays against Movant herein.

       4)     For such Order regarding adequate protection of Movant's interest as this Court deems proper.

       5)     For attorneys' fees and costs of suit incurred herein.

       6)     For an Order waiving the 14-day stay described by Bankruptcy Rule 4001(a)(3).

       7)     For an Order that, in addition to foreclosure, permits activity necessary to obtain possession of said collateral; therefore, all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtors.

       8)     For such other relief as this Court deems appropriate.

Dated: August 8, 2017

SPROUSE LAW FIRM, PLLC
Attorneys for Bank of America, N.A.

BY: /s/ James W. Sprouse, Jr.
     James W. Sprouse, Jr.
N.C. Bar No.: 26767
3109 Poplarwood Court, Suite 115
Raleigh, NC  27604
(919) 954-1900
jsprouse@sprousefirm.com
FHAC.241-4185.NF

**Multistate**

# NOTE

FHA Case No.
Redacted

LOAN #:   Redacted

JUNE 06, 2008
[Date]

134 DEEPWOODS RDG, ROCKY POINT, NC 28457-7535
[Property Address]

### 1.   PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE BANK, FSB
and its successors and assigns.

### 2.   BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTEEN THOUSAND ONE HUNDRED SEVENTY SIX and 00/100

Dollars (U.S. $116,176.00       ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE & SEVEN-EIGHTHS         percent (   5.875 %) per year until the full amount of principal has been paid.

### 3.   PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4.   MANNER OF PAYMENT

#### (A)   Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on AUGUST 01, 2008        . Any principal and interest remaining on the first day of JULY, 2038        , will be due on that date, which is called the "Maturity Date."

#### (B)   Place

Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.

#### (C)   Amount

Each monthly payment of principal and interest will be in the amount of U.S. $687.22         . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

#### (D)   Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐  Graduated Payment Allonge       ☐  Growing Equity Allonge       ☐  Other [specify]

### 5.   BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6.   BORROWER'S FAILURE TO PAY

#### (A)   Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                         percent (   4.000 %) of the overdue amount of each payment .

#### (B)   Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of


Redacted


Redacted            EXHIBIT A

CASE #: Redacted                                                              LOAN #: Redacted

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)  Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
STEPHANIE BAKER                                  -Borrower

PAY TO THE ORDER OF                              _____ (Seal)
                                                                                                 -Borrower
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB                            _____ (Seal)
                                                                                                 -Borrower
BY _____
     LAURIE MEDER                                _____ (Seal)
     SENIOR VICE PRESIDENT                                                                        -Borrower

FILED

BK 3476 PG 061

08 JUN -9 PM 12: 33

JOYCE M. SWICEGOOD
REGISTER OF DEEDS
PENDER COUNTY, NC

**Redacted**



**Redacted**

# DEED OF TRUST

**State of North Carolina**

Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared and Return to:
Aaron B. Anderson, PLLC
5710 Oleander Dr., Suite 204
Wilmington, NC 28403

Prepared By:
MARY E. CATRON
COUNTRYWIDE BANK, FSB

1437 MILITARY CUTOFF RD ST 1

**Redacted**
[Case #]

**Redacted**
[Doc ID #]

FHA Case No.
**Redacted**

MIN **Redacted**

THIS DEED OF TRUST ("Security Instrument") is made on  JUNE 06, 2008    . The Grantor is
STEPHANIE BAKER, AN UNMARRIED WOMAN

Recorded and Verified
Joyce M. Swicegood
Register of Deeds
Pender County, NC

("Borrower"). The trustee is
TRUSTEE SERVICES OF CAROLINA, LLC
5919 OLEANDER DR, SUITE 115, WILMINGTON, NC 28403
("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender,
as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware,
and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE BANK, FSB
("Lender") is organized and existing under the laws of THE UNITED STATES        , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
Borrower owes Lender the principal sum of
ONE HUNDRED SIXTEEN THOUSAND ONE HUNDRED SEVENTY SIX and 00/100

Dollars (U.S. $ 116,176.00        ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JULY 01, 2038        . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

**FHA North Carolina Deed of Trust with MERS– 4/96**

MERS FHA Deed of Trust-NC
2004N-NC (11/07)(d/i)

Page 1 of 6

Amended 2/98



**Redacted**



**Redacted**



CASE #: **Redacted**                                                      DOC ID #: **Redacted**

irrevocably grants and conveys to the Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in PENDER                                                          County, North Carolina:

**Being all of Lot 99, Section 4, Bellhammon Plantation, as shown on a map recorded in Map Book 31 at Page 62 of the Pender County Registry, reference to which map is hereby made for a more particular description.**

**Manufacturer's Name:  Palm Harbor Homes;  Manufacturer's Name and Model - Number:  Palm Harbor, UPNC11490A&B;  HUD Certification:  PFS473589 and PFS473590; Length:  27 x 67, which property is affixed and attached to the real property and is part of the real property.**

Parcel ID Number:  3223-33-0768-0000                      which has the address of
                           134 DEEPWOODS RDG, ROCKY POINT
                                     [Street, City]
North Carolina 28457-7535  ("Property Address");
                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
    **1.**    **Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    **2.**    **Monthly Payment of Taxes, Insurance and Other Charges.**  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either:  (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA.  If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument.  If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower.  Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).
    **3.**    **Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
    First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

BK 3 4 7 6 PG 0 6 3

CASE #: **Redacted**                                                          DOC ID #: **Redacted**

Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note; and
Fifth, to late charges due under the Note.

**4.    Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.    Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.    Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.    Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.    Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.    Grounds for Acceleration of Debt.**
    (a)    **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
        (i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
        (ii)    Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

BK 3 4 7 6 PG 0 6 4

CASE #: **Redacted**

DOC ID #: **Redacted**

**(b)    Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)    All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)    No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)    Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)    Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.    Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.    Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.    Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.    Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.    Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.    Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.    Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16.    Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products,

BK 3 4 7 6 PG 0 6 5

CASE #: Redacted                                    DOC ID #: Redacted

toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** To the extent permitted by applicable law, Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notice to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of    5.000    % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

BK 3 4 7 6 PG 0 6 6

CASE #: **Redacted**       DOC ID #: **Redacted**

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider                    ☐ Growing Equity Rider
☐ Planned Unit Development Rider       ☐ Graduated Payment Rider
☐ Other [specify]

    BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

X _____ (Seal)
    STEPHANIE BAKER                          - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

STATE OF NORTH CAROLINA,              New Hanover          County ss:
    I,       Aaron Anderson
a Notary Public of the County of _____ New Hanover _____, State of North Carolina, do hereby certify that

_____ STEPHANIE BAKER _____

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
    Witness my hand and official seal this ____6th____ day of ___June, 2008___,

    My Commission Expires: __6/23/09__

                        AARON ANDERSON  Notary Public   Aaron Anderson
                         NOTARY PUBLIC
                       NEW HANOVER COUNTY, N.C.
                     My Commission Expires 06-23-2009

STATE OF NORTH CAROLINA,                                   County ss:
    The foregoing certificate of _____
a Notary Public of the County of _____, State of
_____, is certified to be correct.
    This _____ day of _____, _____,
                                                    Registrar of Deeds

                                            By _____
                                               Deputy Assistant

MERS FHA Deed of Trust-NC
2004N-NC (11/07)                    Page 6 of 6

Doc No:     20009869
Recorded:  04/28/2016 10:31:31 AM
Fee Amt: $26.00                     Page 1 of 1

Pender County North Carolina
Sharon Lear Willoughby, Register of Deeds

BK **4619**    PG **538 - 538 (1)**

This space for Recorder's use



DocID# **Redacted**

Property Address:
**134 Deepwoods Rdg**
**Rocky Point, NC 28457-7535**
**Redacted**                 4/19/2016  FCL01

| Recording Requested By: | When recorded mail to: |
|---|---|
| Bank of America | CoreLogic |
| Prepared By: | Mail Stop: ASGN |
| Bank of America | P.O. Box 961006 |
| 800-444-4302 | Ft Worth, TX 76161-9836 |
| 1800 Tapo Canyon Road | |
| Simi Valley, CA 93063 | |

MIN #: **Redacted**                    MERS Phone #:    888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (herein "Assignor"), whose address is P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS hereby assign and transfer to BANK OF AMERICA N.A. (herein "Assignee"), whose address is C/O BAC, M/C: CA6-914-01-43, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, and its successors and assigns all its right, title, and interest in and to a certain Deed of Trust described below.

| | |
|---|---|
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS |
| Borrower(s): | STEPHANIE BAKER, AN UNMARRIED WOMAN |
| Original Trustee: | TRUSTEE SERVICES OF CAROLINA, LLC |
| Date of Deed of Trust: | 6/6/2008 |
| Original Loan Amount: | $116,176.00 |

Recorded in **Pender County, NC** on: 6/9/2008, book **3476**, page **061** and instrument number **N/A**

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE
BANK, FSB, ITS SUCCESSORS AND ASSIGNS

By: _____
Andrea N Gonzales, Assistant Vice President
Date _____

State of **Arizona**
County of **Maricopa**

On **4-19-16** , before me, GRACE E. PENA, Notary Public, personally appeared Andrea N Gonzales, Assistant Vice Presidentof MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS, whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be and whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last written.

_____
Notary Public: GRACE E. PENA

GRACE E PENA
NOTARY PUBLIC - ARIZONA
Pinal County
My Commission Expires
September 12, 2019

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Melvin Troy Putman** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Stephanie Putman** | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NORTH CAROLINA | | |
| Case number | | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

1.1

**134 Deepwoods Ridge**
Street address, if available, or other description

**Rocky Point          NC      28457-0000**
City                              State        ZIP Code

**Pender**
County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
■ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Double wide mobile home attached to the ground, .56 acres;  Being all of lot 99, Section 4, Bellhammon Plantation as shown on a map recorded in Map Bood 31 at Page 62 of the Pender County Registry;  Value:  Pender County Tax Office**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$64,152.00** | **$64,152.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**..........................................=> **$64,152.00**

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

EXHIBIT B

| Debtor 1 | **Melvin Troy Putman** | | |
|---|---|---|---|
| Debtor 2 | **Stephanie Putman** | Case number *(if known)* | |

**3.  Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | | | |
|---|---|---|---|---|
| 3.1 | Make: | **Kia** | **Who has an interest in the property?** Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |

3.1
Make: **Kia**
Model: **Soul**
Year: **2015**
Approximate mileage: **34,363**
Other information:

4 door sedan, 4 cylinder, 2.0 L engine; VIN: KNDJX3A53F7187391;  Value: NADA

**Who has an interest in the property?** Check one
☐ Debtor 1 only
■ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?     Current value of the portion you own?

$11,350.00     $11,350.00

---

3.2
Make: **Harley Davidson**
Model: **Cruiser FXDL Dyna Low Rider**
Year: **2015**
Approximate mileage: **324**
Other information:

Motorcycle, 103 CI,  VIN: 1HD1GNM16FC323930, Value: NADA

**Who has an interest in the property?** Check one
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?     Current value of the portion you own?

$12,480.00     $12,480.00

---

3.3
Make: **Plymouth**
Model: **Voyager**
Year: **1997**
Approximate mileage: **221,682**
Other information:

Location: 705 Inlet Acres Drive, Wilmington NC 28412; Condition: Poor VIN#: 2P4FP2531VR418998; Value: NADA

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?     Current value of the portion you own?

$1,250.00     $1,250.00

---

**4.  Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

4.1
Make: **Carr**
Model: **5X8 Utility Trailer**
Year: **2010**
Other information:

VIN: 4YMUL0812AG093180

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?     Current value of the portion you own?

$250.00     $250.00

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1    **Melvin Troy Putman**
Debtor 2    **Stephanie Putman**

Case number *(if known)*

| 4.2 | Make: | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
|---|---|---|---|---|

Model:    **4X6 Cargo Trailer**
Year:     **2016**

Other information:

VIN: 5YCBE0615GH029236

Who has an interest in the property? Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this is community property
(see instructions)

Current value of the entire property?     Current value of the portion you own?

$700.00     $700.00

| 4.3 | Make: | |

Model:    **5X8 Cargo Trailer**
Year:     **2016**

Other information:

VIN: 507711515GN001163

Who has an interest in the property? Check one

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

Current value of the entire property?     Current value of the portion you own?

$1,000.00     $1,000.00

5.  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................................=>

$27,030.00

**Part 3:**   **Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6.  **Household goods and furnishings**
    *Examples:* Major appliances, furniture, linens, china, kitchenware
    ☐ No
    ■ Yes. Describe.....

Washer/Dryer ($200), microwave ($10), cooking utensils ($15), silverware ($5), cookware ($25), tables & chairs ($30), bedroom furniture ($100), living room furniture ($125), dressers/night stands ($150), lamps/accessories ($35), paintings ($30),

$725.00

7.  **Electronics**
    *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
    ☐ No
    ■ Yes. Describe.....

TV (125), VCR/DVD player ($35), compact discs ($50), stereo equipment ($30), computers ($100), computer printer ($25), computer supplies ($10), cell phones ($100),

$475.00

8.  **Collectibles of value**
    *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
    ■ No
    ☐ Yes. Describe.....

9.  **Equipment for sports and hobbies**
    *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
    ☐ No
    ■ Yes. Describe.....

Drums & Accessories ($200), Guitar and Accessories ($100)

$300.00

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | **Melvin Troy Putman** | | Case number *(if known)* | |
| Debtor 2 | **Stephanie Putman** | | | |

**10. Firearms**

*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☐ No

■ Yes.  Describe.....

| Ruger 9mm Pistol | $300.00 |
|---|---|

**11. Clothes**

*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No

■ Yes.  Describe.....

| Clothing for a woman and a man | $50.00 |
|---|---|

**12. Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No

■ Yes.  Describe.....

| Wedding rings ($50), costume jewelry and watches ($65) | $115.00 |
|---|---|

**13. Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☐ No

■ Yes.  Describe.....

| Dog (white boxer) | $5.00 |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**

☐ No

■ Yes.  Give specific information.....

| Carpenter and mechanic tools ($35), lawnmower ($900), yard tools ($40) | $975.00 |
|---|---|

**15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................................**

$2,945.00

**Part 4:**  Describe Your Financial Assets

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No

■ Yes..........................................................................................

| | Cash | $12.00 |
|---|---|---|

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor 1 | **Melvin Troy Putman** | | |
|---|---|---|---|
| Debtor 2 | **Stephanie Putman** | | Case number *(if known)* |

■ Yes.......................

Institution name:

| | | | | |
|---|---|---|---|---|
| 17.1. | **Checking** | **BB&T (joint #** Redacted | | $7.34 |
| 17.2. | **Checking** | **BB&T (joint #** Redacted | | $5.61 |
| 17.3. | **Savings** | **BB&T (joint #** Redacted | | $5.16 |
| 17.4. | **Savings** | **Alliance Credit Union** Redacted | | $25.00 |

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes.................    Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ■ No
    ☐ Yes.  Give specific information about them...................
    Name of entity:                          % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
    Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ☐ No
    ■ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| **401(k)** | **Fidelity Investments** | $21,930.00 |

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ☐ No
    ■ Yes. ....................

| | Institution name or individual: | |
|---|---|---|
| **Rent** | **Robert Basinger** <br> **314 Lewis Rd** <br> **Hampstead, NC 28443** | $1,100.00 |

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
    ■ No
    ☐ Yes.............    Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ■ No
    ☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

| Debtor 1 | **Melvin Troy Putman** | |
|---|---|---|
| Debtor 2 | **Stephanie Putman** | Case number *(if known)* |

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
- ■ No
- ☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
- ■ No
- ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
- ■ No
- ☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
- ■ No
- ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
- ■ No
- ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
- ■ No
- ☐ Yes.  Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
- ■ No
- ☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
- ■ No
- ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
- ■ No
- ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
- ■ No
- ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
- ■ No
- ☐ Yes.  Give specific information..

---

| Official Form 106A/B | Schedule A/B: Property | page 6 |
|---|---|---|

| Debtor 1 | **Melvin Troy Putman** |
|---|---|
| Debtor 2 | **Stephanie Putman** |

Case number *(if known)* _____

36.  **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**...................................................................................................................... | **$23,085.11**

---

**Part 5:**    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37.  **Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes.  Go to line 38.

---

**Part 6:**    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
             If you own or have an interest in farmland, list it in Part 1.

46.  **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes.  Go to line 47.

---

**Part 7:**    Describe All Property You Own or Have an Interest in That You Did Not List Above

53.  **Do you have other property of any kind you did not already list?**
     *Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

54.  **Add the dollar value of all of your entries from Part 7. Write that number here** ..................................... | **$0.00**

---

**Part 8:**    List the Totals of Each Part of this Form

| | | |
|---|---|---|
| 55.  **Part 1: Total real estate, line 2** ....................................................................... | | **$64,152.00** |
| 56.  **Part 2: Total vehicles, line 5** | $27,030.00 | |
| 57.  **Part 3: Total personal and household items, line 15** | $2,945.00 | |
| 58.  **Part 4: Total financial assets, line 36** | $23,085.11 | |
| 59.  **Part 5: Total business-related property, line 45** | $0.00 | |
| 60.  **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61.  **Part 7: Total other property not listed, line 54** | + $0.00 | |
| 62.  **Total personal property.** Add lines 56 through 61... | $53,060.11 | Copy personal property total     **$53,060.11** |

63.  **Total of all property on Schedule A/B.** Add line 55 + line 62 | **$117,212.11**

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Melvin Troy Putman** |
| | First Name       Middle Name       Last Name |
| Debtor 2 | **Stephanie Putman** |
| (Spouse if, filing) | First Name       Middle Name       Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NORTH CAROLINA |
| Case number (if known) | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:**    List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1** | **Alliance Credit Union**<br>Creditor's Name | $25,186.46 | $11,350.00 | $13,836.46 |

**Describe the property that secures the claim:**

**2015 Kia Soul 34,363 miles 4 door sedan, 4 cylinder, 2.0 L engine; VIN: KNDJX3A53F7187391; Value: NADA**

**P.O. Box 18460**
**San Jose, CA 95158**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Who owes the debt?** Check one.

☐ Debtor 1 only
☑ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred    **3/2015**        Last 4 digits of account number    Redacted

| | | | | |
|---|---|---|---|---|
| **2.2** | **Carrington Mortgage Services, LLC**<br>Creditor's Name | $112,600.00 | $64,152.00 | $48,448.00 |

**Describe the property that secures the claim:**

**134 Deepwoods Ridge Rocky Point, NC 28457  Pender County Double wide mobile home attached to the ground, .56 acres;  Being all of lot 99, Section 4, Bellhammon Plantation as shown on a map recorded in Map Bood 31 at Page 62 of the Pender C**

**PO Box 3489**
**Anaheim, CA 92803**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☑ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1  **Melvin Troy Putman**                                          Case number *(if know)* _____
          First Name        Middle Name        Last Name

Debtor 2  **Stephanie Putman**
          First Name        Middle Name        Last Name

☐ Debtor 1 and Debtor 2 only                    ☐ Statutory lien (such as tax lien, mechanic's lien)
☑ At least one of the debtors and another        ☐ Judgment lien from a lawsuit
☐ **Check if this claim relates to a**           ☐ Other (including a right to offset) _____
   **community debt**

| | | |
|---|---|---|
| Date debt was incurred | **Opened 6/2008, Last Active: 12/1/2015** | Last 4 digits of account number  <span style="color:red">Redacted</span> _____ |

---

| 2.3 | **Harley Davidson Credit Corp** | Describe the property that secures the claim: | $12,013.69 | $12,480.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**2015 Harley Davidson Cruiser FXDL Dyna Low Rider 324 miles Motorcycle, 103 CI,  VIN: 1HD1GNM16FC323930, Value: NADA**

**Dept 15129
Palatine, IL 60055**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ Debtor 1 only                      ☑ An agreement you made (such as mortgage or secured car loan)
☐ Debtor 2 only                      ☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Debtor 1 and Debtor 2 only         ☐ Judgment lien from a lawsuit
☐ At least one of the debtors and another  ☐ Other (including a right to offset) _____
☐ **Check if this claim relates to a community debt**

| | | |
|---|---|---|
| Date debt was incurred | **Date Opened 6/2015  Last Active 5/8/2017** | Last 4 digits of account number  <span style="color:red">Redacted</span> |

---

| 2.4 | **One Main Financial Services, Inc.** | Describe the property that secures the claim: | $7,977.00 | $11,350.00 | $7,977.00 |
|---|---|---|---|---|---|

Creditor's Name

**Creditor holds a nonpossessory, nonpurchase money secuirty interst as a junior lien holder on Debtor's Kia Soul vehilce.**

**5500 Market Street
Wilmington, NC 28405**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

**Who owes the debt?** Check one.

☐ Debtor 1 only                      ☑ An agreement you made (such as mortgage or secured car loan)
☐ Debtor 2 only                      ☐ Statutory lien (such as tax lien, mechanic's lien)
☑ Debtor 1 and Debtor 2 only         ☐ Judgment lien from a lawsuit
☐ At least one of the debtors and another  ☐ Other (including a right to offset) _____
☐ **Check if this claim relates to a community debt**

| | | |
|---|---|---|
| Date debt was incurred | **6/25/2015** | Last 4 digits of account number  <span style="color:red">Redacted</span> |

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

| Debtor 1 | **Melvin Troy Putman** | | | Case number (if know) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Stephanie Putman** | | | | |
| | First Name | Middle Name | Last Name | | |

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $157,777.15 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $157,777.15 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐   Name, Number, Street, City, State & Zip Code
**Alliance Credit Union**
**3315 Almaden Expressway**
**San Jose, CA 95118**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number ___

☐   Name, Number, Street, City, State & Zip Code
**Harley Davidson Financial**
**PO Box 22048**
**Carson City, NV 89721**

On which line in Part 1 did you enter the creditor?   **2.3**

Last 4 digits of account number ___

---

Official Form 106D          Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**          page 3 of 3

**Fill in this information to identify your case:**

Debtor 1    **Melvin Troy Putman**
            First Name          Middle Name          Last Name

Debtor 2    **Stephanie Putman**
(Spouse if, filing)  First Name    Middle Name          Last Name

United States Bankruptcy Court for the:    EASTERN DISTRICT OF NORTH CAROLINA

Case number
(if known)

☐ Check if this is an
   amended filing

Official Form 108
# Statement of Intention for Individuals Filing Under Chapter 7    12/15

If you are an individual filing under chapter 7, you must fill out this form if:
- ■ creditors have claims secured by your property, or
- ■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

**Part 1:    List Your Creditors Who Have Secured Claims**

1. **For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Alliance Credit Union**<br><br>Description of property securing debt: **2015 Kia Soul 34,363 miles 4 door sedan, 4 cylinder, 2.0 L engine; VIN: KNDJX3A53F7187391;  Value: NADA** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>■ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: | ■ No<br><br>☐ Yes |
| Creditor's name: **Carrington Mortgage Services, LLC**<br><br>Description of property securing debt: **134 Deepwoods Ridge Rocky Point, NC 28457  Pender County Double wide mobile home attached to the ground, .56 acres;  Being all of lot 99, Section 4, Bellhammon Plantation as shown on a map recorded in Map Bood 31 at Page 62 of the Pender C** | ■ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: | ■ No<br><br>☐ Yes |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

EXHIBIT C

Debtor 1  **Melvin Troy Putman**

Debtor 2  **Stephanie Putman**                Case number (*if known*) _____

| | | |
|---|---|---|
| Creditor's name: | **Harley Davidson Credit Corp** | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>■ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: |
| Description of property securing debt: | **2015 Harley Davidson Cruiser FXDL Dyna Low Rider 324 miles Motorcycle, 103 CI,  VIN: 1HD1GNM16FC323930, Value: NADA** | |

■ No

☐ Yes

---

**Part 2:**  **List Your Unexpired Personal Property Leases**

For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |

---

**Part 3:**  **Sign Below**

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.

**X**  **/s/ Melvin Troy Putman**                    **X**  **/s/ Stephanie Putman**

    **Melvin Troy Putman**                            **Stephanie Putman**

    Signature of Debtor 1                            Signature of Debtor 2

    Date     **July 28, 2017**                Date    **July 28, 2017**

---